## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JESSE JAMES FRANCIS,  *
JOSHUA ISAIAH JONES,

     *

     *Plaintiffs*,

     *

     v.             Civil Action No. RDB-24-2295

     *

UNIVERSITY OF BALTIMORE,

     *

     *Defendant*.

*   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM OPINION

Plaintiff Jesse James Francis ("Mr. Francis") is a heterosexual, white male and Plaintiff Joshua Isaiah Jones ("Mr. Jones") (collectively with Mr. Francis, "Plaintiffs") is a heterosexual African American male. (ECF Nos. 21, 19-1 ¶¶ 8, 10.) Both are military veterans who have been found disabled by the United States Department of Veterans Affairs. (ECF Nos. 21, 19-1 ¶¶ 14, 19, 23.) Both were subject to harassment accusations against them while they were enrolled in undergraduate programs at Defendant University of Baltimore ("Defendant" or "UB"). (ECF Nos. 21, 19-1 ¶¶ 31, 42, 7, 9.) Ultimately, the accusations against Mr. Francis were deemed unsubstantiated, and Plaintiffs do not allege whether the accusations against Mr. Jones resulted in any discipline against him. (ECF Nos. 21, 19-1 ¶ 53.) Nevertheless, Mr. Francis and Mr. Jones make claims in their proposed Second Amended Complaint that they were subjected to discrimination. (ECF Nos. 21, 19-1 at 7–15.)

Specifically, Plaintiffs initiated this action on April 11, 2024, by filing in the Circuit Court for Baltimore City, Maryland a four-Count Complaint alleging that UB violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, and the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.* (ECF No. 2; ECF No. 1-2 at 3.) UB timely removed the action to this Court pursuant to 28 U.S.C. §§ 1331, 1441, (ECF No. 1), based on federal question jurisdiction and moved to dismiss Plaintiffs' initial Complaint, *see* (ECF No. 7). Plaintiffs then amended their Complaint as a matter of course, which mooted Defendant's original Motion to Dismiss. *See* (ECF No. 13.) Plaintiffs' operative First Amended Complaint (ECF No. 10) ("First Amended Complaint") alleges six claims:[1] violation of Title IX, 20 U.S.C. § 1681 as to Mr. Jones (Count I); violation of Title IX, 20 U.S.C. § 1681 *et seq.* as to Mr. Francis (Count II); violation of the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq.*, on the basis of discriminatory privileges and services provided as to Mr. Jones (Count III); violation of the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq.*, on the basis of discriminatory privileges and services provided as to Mr. Francis (Count IV); failure to properly train employees and contractors as to both Plaintiffs (Count VI); and pattern and practice of sex discrimination in violation of Article 24 of the Maryland Declaration of Rights as to both Plaintiffs (Count VII). (ECF No. 10 at 3–9.)

Presently pending before this Court are two motions: UB's Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 14) ("Defendant's Motion to Dismiss" or "UB's Motion"), and Plaintiffs' Motion for Leave to Amend Complaint (ECF No. 19) ("Plaintiffs' Motion"). For the reasons that follow, Defendant's Motion to Dismiss (ECF No. 14) is GRANTED, and Plaintiffs' Motion for Leave to Amend (ECF No. 19) is DENIED.

---

[1] Plaintiffs' First Amended Complaint does not include a Count V. *See* (ECF No. 10 at 7–8.) Accordingly, although the Counts are numbered such that there is a Count VII, Plaintiffs allege only six claims. *See* (ECF No. 10 at 3–9.) UB refers to the Counts as they are alleged in Plaintiffs' First Amended Complaint. (ECF No. 14-1 at 2 n.2.) For clarity, the Court adopts the parties' numbering and refers to the Counts as they are numbered in the First Amended Complaint.

Relatedly, because amendment would be futile, Plaintiffs' First Amended Complaint is DISMISSED WITH PREJUDICE.  Quite simply, after review of the Plaintiffs' original Complaint, First Amended Complaint, and proposed Second Amended Complaint, this Court concludes that Plaintiffs have failed to plead any colorable claim of sex discrimination, disability discrimination, or related failure to train.

## BACKGROUND

In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.), Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).  Except where otherwise indicated, the following facts are derived from Plaintiffs' First Amended Complaint and accepted as true for the purpose of Defendant's Motion to Dismiss under Rule 12(b)(6).

Plaintiffs are both male, disabled veterans of the United States military who were previously enrolled as undergraduate students at UB.  (ECF No. 10 ¶¶ 7–8, 12.)  Plaintiffs allege that their disabilities fall within the statutory definition of disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102.  (*Id.* ¶¶ 48, 58.)  According to Plaintiffs, they were Honor Students involved in several campus organizations at UB, and they both intend to pursue graduate education.  (*Id.* ¶ 9, 11.)  Both Plaintiffs allege that they faced separate allegations of harassment from two different female students while enrolled at UB.  (*Id.* ¶¶ 13, 21.)  The Court describes separately the allegations related to each Plaintiff.

Plaintiffs allege that on April 29, 2022, Yazmin Bell ("Ms. Bell"), a female student at UB, accused Mr. Jones of stalking her and filed a complaint with UB.  (*Id.* ¶ 13.)  According to Plaintiffs, Ms. Bell and an unidentified male entered the Veteran's Center where Mr. Jones worked, and Ms. Bell identified Mr. Jones to the unidentified male, who then physically attacked him.[2]  (*Id.* ¶¶ 14–17.)  Plaintiffs allege that video footage shows Ms. Bell and the unidentified male waiting for the elevator together both before and after the attack.  (*Id.* ¶ 17.)  According to Plaintiffs, this incident was never investigated, or any investigation "focused solely on obtaining proof in order to support the accusations," and Ms. Bell was never disciplined.  (*Id.* ¶¶ 18, 33, 53.)  Plaintiffs further allege that while the harassment allegation against Mr. Jones was under investigation and both Mr. Jones and Ms. Bell were still students at UB, a case manager and six additional individuals from UB "appeared in a protective order proceeding in order to support Ms. Bell against Mr. Jones."  (*Id.* ¶¶ 19–20.)  According to Plaintiffs, the Title IX investigation against Mr. Jones was so biased in favor of Ms. Bell that it constituted "a witch hunt."  (*Id.* ¶ 72.)

Plaintiffs allege that on October 1, 2022, a female student named Madison Vital ("Ms. Vital")[3] reported to a professor that Mr. Francis was harassing her.  (*Id.* ¶¶ 21–22.)  According to Plaintiffs, the professor did not report the allegations to UB, but disciplinary proceedings were initiated against Mr. Francis.  (*Id.* ¶¶ 23–24, 69–70.)  Plaintiffs allege that UB did not conduct any Title IX investigation as to Mr. Francis, and the claims against him were found

---

[2]  The date of the alleged incident involving Mr. Jones, Ms. Bell, and the unidentified male is not clear from the First Amended Complaint.  *See* (ECF No. 10 ¶¶ 13–20.)

[3]  Plaintiffs provide inconsistent spelling for Ms. Vital's surname.  At times, they refer to her as Ms. Vitale, *see, e.g.* (ECF No. 10 ¶ 21), or Ms. Vital, *see, e.g.* (*id.* ¶ 39).  For consistency, the Court adopts the spelling "Ms. Vital."

to be unsubstantiated after a hearing. (*Id.* ¶¶ 24–25.) Plaintiffs allege that while UB's administrative proceedings were ongoing, six "UB police officers appeared in a criminal proceeding in order to support Ms. Vital against Mr. Francis." (*Id.* ¶ 26.) Plaintiffs allege that there was no objective investigation into Ms. Vital's allegations, and any investigation "focused solely on obtaining proof to support the accusations." (*Id.* ¶¶ 42–43, 62–63.)

Plaintiffs allege that UB's response to the harassment allegations discriminated against them based on their sex and their disabilities. Specifically, they allege that UB violated Title IX by conducting biased investigations that focused on obtaining proof of the allegations in a manner that "give[s] rise to an inference of discrimination" in favor of females who accuse males of sexual misconduct. (*Id.* ¶¶ 32–34, 42–44.) Similarly, Plaintiffs allege that the biased investigations also "give rise to an inference of discrimination" against individuals with combat-related disabilities who are accused of sexual misconduct. (*Id.* ¶¶ 54, 64.) Plaintiffs allege that any reason UB provides to explain its behavior during the investigations is pretextual, and the investigations caused them mental anguish, emotional distress, and humiliation. (*Id.* ¶¶ 35, 36, 45, 46, 55, 65.) Relatedly, Plaintiffs allege that UB failed to properly train its employees and contractors to report and neutrally investigate serious allegations of sex discrimination or misconduct. (*Id.* ¶¶ 68–72.) Finally, Plaintiffs allege that they were disciplined more severely than similarly situated female students based on their male sex, and this differential treatment was part of a broader pattern or practice of discrimination against male students at UB. (*Id.* ¶¶ 77–83.)

Plaintiffs allege that the Maryland State Treasurer's Office acknowledged that it had received Plaintiffs' claims under the Maryland Tort Claims Act on April 26, 2023, and both

claims were denied.  (*Id.* ¶¶ 5–6.)  On April 11, 2024, Plaintiffs initiated the instant action by filing a four-Count Complaint (ECF No. 2) against UB in the Circuit Court for Baltimore City, Maryland.  *See* (ECF No. 1-2 at 3.)  UB timely removed to this Court and, on August 15, 2024, filed a Motion to Dismiss (ECF No. 7) as to the original Complaint.  On September 10, 2024, Plaintiffs filed a First Amended Complaint (ECF No. 10), and by subsequent Order, the Court denied as moot UB's Motion to Dismiss the original Complaint.  *See* (ECF No. 13).  On October 8, 2024, UB filed a Motion to Dismiss (ECF No. 14) ("Defendant's Motion" or "UB's Motion") as to Plaintiffs' First Amended Complaint, and Plaintiffs responded in Opposition (ECF No. 17).  UB timely filed its Reply (ECF No. 18).  On February 5, 2025, Plaintiffs filed a Motion to Amend their First Amended Complaint (ECF No. 19) ("Plaintiffs' Motion"), including as an exhibit their proposed Second Amended Complaint (ECF No. 19-1; ECF No. 21) ("proposed Second Amended Complaint").  The proposed Second Amended Complaint adds additional factual allegations such as Plaintiffs' races and more detailed allegations about UB's investigations of the accusations against Plaintiffs.  *See generally* (ECF No. 19-1; ECF No. 21).  UB responded in Opposition (ECF No. 22) and Plaintiffs have replied (ECF No. 25). This matter is now ripe for review.

## STANDARDS OF REVIEW

### I.    Motion to Dismiss for Lack of Jurisdiction[4]

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a court's authority to hear the matter brought by

---

[4] Although UB brings its Motion pursuant to Federal Rule of Civil Procedure 12(b)(6), it challenges Plaintiffs' state law claim in Count VII on the basis of sovereign immunity.  *See* (ECF No. 14-1 at 12–14.)  As the U.S. Court of Appeals for the Fourth Circuit has explained, "sovereign immunity deprives federal courts of

a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or as a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

In this case, UM=B raises a facial challenge to the state law claim in Count VII based on the doctrine of sovereign immunity, which "deprives federal courts of jurisdiction to hear claims." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)). In determining a facial challenge, the court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768–69 (4th Cir. 1991). As Judge Hollander of this Court has explained, where a defendant raises a facial challenge to jurisdiction, "the defendant must show that a complaint fails to allege facts upon which subject-matter jurisdiction can be predicated." *Amador v. Mnuchin*, 476 F. Supp. 3d 125, 139 (D. Md. 2020) (quoting *Hutton v. Nat'l Bd. of Exam'rs, Inc.*, 892 F.3d 613, 620–21 (4th Cir. 2018)).

---

jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject matter jurisdiction." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009); *see also J.C. Driskill, Inc. v. Abdnor*, 901 F.2d 383, 385 (4th Cir. 1990) (deeming waiver of sovereign immunity "a jurisdictional prerequisite" (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). For this reason, the Court analyzes UB's sovereign immunity argument under Federal Rule 12(b)(1).

## II.    Motion to Dismiss for Failure to State a Claim

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

### III.    Leave to Amend

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, a plaintiff may amend his complaint once "as a matter of course at any time before a responsive pleading is served" or "by leave of court or by written consent of the adverse party." In general, leave to amend a complaint pursuant to Rule 15(a) shall be "freely" granted "when justice so requires." FED. R. CIV. P. 15(a)(2); *see also Lance v. Prince George's Cnty., Md.*, 199 F. Supp. 2d 297, 300–301 (D. Md. 2002). The U.S. Court of Appeals for the Fourth Circuit has stated that Rule 15 "gives effect to the federal policy in favor or resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). The matter, however, is committed to the discretion of the district court, *see Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011), and the district judge may deny leave to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rts. Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). As this Court has repeatedly explained, an amendment is insufficient or frivolous if it would not survive a motion to dismiss. *See, e.g.*, *401 N. Charles, LLC v. Sonabank*, Civ. No. RDB-17-0872, 2018 WL 6570680, at *2 (D. Md. Dec. 13, 2018) (citing *Whitaker v. Ciena Corp.*, Civ. No. RDB-18-0044, 2018 WL 3608777, at *3 (D. Md. July 27, 2018)).

## ANALYSIS

### I.    Defendant's Motion to Dismiss

In its Motion (ECF No. 14), UB alleges that Plaintiffs' First Amended Complaint should be dismissed because Plaintiffs fail to sufficiently allege the elements of their gender and ADA discrimination claims in Counts I, II, III, and IV.  (*Id.* at 1–2, 5–10.)  Specifically, UB asserts that Plaintiffs fail to allege facts sufficient to show that (1) gender discrimination was the but-for cause of the Title IX investigation; (2) they had covered disabilities; and (3) UB discriminated against them based on any disability.  (*Id.* at 5–8, 9–10.)  Similarly, UB argues that the negligent failure to train claim in Count V is improperly based on a federal statute rather than common law.  (*Id.* at 10–12.)  Lastly, UB contends that Plaintiffs' pattern and practice claim under the Maryland Declaration of Rights in Count VII is barred by Eleventh Amendment and sovereign immunities.  (*Id.* at 12–14.)  In Opposition, Plaintiffs contend that UB waived immunity by removing the action to federal Court, and they have alleged facts sufficient to plead each claim under liberal fair notice pleading standards.  (ECF No. 17-1 at 3–5.)  In Reply (ECF No. 18), UB argues that Plaintiffs waived their negligent pattern or practice claim by failing to respond to arguments for its dismissal, and UB did not waive sovereign immunity because Plaintiffs did not assert the pattern or practice claim in Count VII until after UB had removed the action to this Court.  (ECF No. 18 at 5–7.)  The Court addresses each claim in turn, grouping some claims together where appropriate.

### A.  Counts I and II: Gender Discrimination in Violation of Title IX

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination

under any education program or activity receiving Federal financial assistance." 20 U.S.C. §

1681(a). This broad language has given rise to numerous types of gender discrimination

claims,[5] but Plaintiffs in this case allege only a general violation of Title IX. Until 2021, the

U.S. Court of Appeals for the Fourth Circuit "ha[d] no precedential decisions regarding Title

IX claims in the context we face here—higher-education disciplinary proceedings." *Sheppard*

*v. Visitors of Virginia State Univ.*, 993 F.3d 230, 234–35 (4th Cir. 2021). Thus, in *Sheppard v.*

*Visitors of Virginia State University*, 993 F.3d 230 (4th Cir. 2021), the Fourth Circuit for the first

time held that Title IX "ask[s] merely 'do the alleged facts if true raise a plausible inference

that the university discriminated against [the student] on the basis of sex?'" *Id.* at 235 (quoting

*Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)). The Fourth Circuit carefully emphasized,

however, "that inherent in this approach is a requirement that a Title IX plaintiff adequately

plead causation—that is, a causal link between the student's sex and the university's challenged

disciplinary proceeding." *Id.* at 236. Significantly, "[n]ot just any causal link will suffice

because, again, the text of Title IX controls . . . 'on the basis of sex' requires 'but-for' causation

in Title IX claims alleging discriminatory school disciplinary proceedings." *Id.* at 236–37.

    The Supreme Court has explained that but-for "causation is established whenever a

particular outcome would not have happened 'but for the purported cause' . . . [s]o long as the

plaintiff's sex was one but-for cause of th[e challenged action], that is enough to trigger the

---

[5] For example, this Court has recognized "erroneous outcome" claims, in which a plaintiff alleges that a biased investigation produces an erroneous outcome. *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 765–66 (D. Md. 2015). Such claims require a plaintiff to allege "'(1) 'a procedurally or otherwise flawed proceeding'; (2) 'that has led to an adverse and erroneous outcome'; and (3) 'particular circumstances suggesting that gender bias was the motivating factor behind the erroneous finding.'" *Id.* (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)). Title IX also authorizes retaliation claims. *See Feminist Majority Found. v. Hurley*, 911 F.3d 674, 694 (4th Cir. 2018) (citing *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010).

law." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 656 (2020) (discussing but-for causation in context of Title VII sex discrimination claim); *see also Sheppard*, 993 F.3d at 236 (citing *Bostock* in discussion of causation in Title IX discrimination claim related to school disciplinary proceedings). As this Court has previously recognized, sufficiently alleging causation in Title IX claims in the context of higher education disciplinary proceedings presents unique informational challenges. *Carter v. Bowie State Univ.*, Civ. No. GJH-20-2725, 2022 WL 717043, at *8 (D. Md. Mar. 9, 2022). "Since student disciplinary proceedings are often private, in many cases the information necessary to determine whether similarly situated students have been treated differently may be solely in the defendant's possession." *Id.* (quoting *Streno v. Shenandoah Univ.*, 278 F. Supp. 3d 924, 931 (W.D. Va. 2017)). Accordingly, this Court has recognized that a plaintiff in such cases "need not plead the facts of other student disciplinary proceedings to which he does not have access to state a claim." *Id.* (quoting *Streno*, 278 F. Supp. at 931 (citation omitted)). Rather, to adequately allege causation in a Title IX discrimination claim in the context of university disciplinary proceedings, a plaintiff must "plead facts sufficient to give rise to a plausible inference of discrimination that was caused by his sex." *Id.* at 238.

In this case, Plaintiffs have alleged no facts that would give rise to an inference that but for their male sex, UB (1) would not have investigated them or would have investigated them more fully; or, in the case of Mr. Francis, (2) would not have initiated disciplinary proceedings.[6]

---

[6] Plaintiffs' allegations are somewhat unclear as to the discrimination that occurred. At various points in their First Amended Complaint, Plaintiffs appear to suggest that they were subject to both *too little and too much* investigation. Plaintiffs allege that any investigation at all was inappropriate, but they also allege that the investigations should have been broader and more objective. *See* (ECF No. 10 ¶¶ 32–34, 42–44 (alleging no objective investigation occurred), ¶ 22–24 (alleging professor failed to properly report accusations and no Title

Notably, Plaintiffs do not allege that they were treated differently than any female students whom fellow students had reported to UB for sexual harassment.  Although Plaintiffs argue that Ms. Bell "engaged in conduct against a male student that constituted assault and/or harassment and suffered no adverse consequences," Plaintiffs do not allege that Ms. Bell's alleged conduct was ever reported to UB.[7]  Specifically, the First Amended Complaint merely alleges that "Ms. Bell was never disciplined, nor was this incident ever investigated."  (ECF No. 10 ¶ 18.)  Moreover, even if Plaintiffs had alleged that Ms. Bell's conduct was reported, Plaintiffs and Ms. Bell are not similarly situated because Plaintiffs were accused of sexual harassment and stalking, while Ms. Bell—if she was accused at all to UB officials—was accused of assisting an assault.  Plaintiffs do not allege that Ms. Vital was ever accused of sexual harassment or any other form of harassment by a fellow student.  At bottom, Plaintiffs have alleged that they are male students and military veterans who were accused of sexual harassment by female students and who faced deficient investigations by UB.  From these allegations, Plaintiffs make the conclusory allegation that UB treated them differently than other individuals based on their sex.  Plaintiffs plead no facts to support this wholly conclusory allegation, and they have not sufficiently alleged that but for their sex UB would have investigated them any differently.  Accordingly, Defendant's Motion to Dismiss the Amended Complaint (ECF No. 14) is GRANTED as to Counts I and II.

---

IX investigation against Mr. Francis occurred).)  Construing all facts to favor Plaintiffs at this pleading stage, the Court construes these allegations to alternatively allege that too much or too little investigation occurred.

[7] Plaintiffs also argue that they allege that "the university provided services to female students but not to male students."  (ECF No. 17 at 5.)  The Court is unable to locate this allegation anywhere in Plaintiffs' First Amended Complaint or proposed Second Amended Complaint.

## B. Counts III and IV: Disability Discrimination in Violation of Americans with Disabilities Act, 42 U.S.C. § 12112

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The U.S. Court of Appeals for the Fourth Circuit "has stated that to establish a violation of the ADA, a plaintiff must show (1) that he has a disability; (2) that he is otherwise qualified for the benefit in question; and (3) that he was excluded from the benefit due to discrimination . . . on the basis of the disability." *Baird ex rel. Baird v. Rose*, 192 F.4th 462, 467 (4th Cir. 1999) (citing *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995)). To sufficiently allege the final element of an ADA discrimination claim, therefore, a plaintiff must allege causation under "the causation standards applicable in Title VII actions." *Id.* at 470; *accord Kelly v. Town of Abingdon, Virginia*, 90 F.4th 158, 169 n.6 (4th Cir. 2024) (discussing application of Title VII standards in ADA cases). The Supreme Court has explained that a claim of discrimination under Title VII requires a plaintiff to allege "that the harassment would not have taken place but for his sex[.]" *Bostock*, 590 U.S. at 664. As applied in ADA cases, the U.S. Court of Appeals for the Fourth Circuit has held that plaintiffs sufficiently plead causation where they allege "that disability was 'a' motivating factor (rather than the 'sole' reason) for the defendant's decision[.]" *Neal v. East Carolina Univ.*, 53 F.4th 130, 150 (4th Cir. 2022). Put differently, "a plaintiff must show that the adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Id.* (quoting *Cogwill v. First Data Techs., Inc.*, 41 F.4th 370, 380 (4th Cir. 2022)).

In this case, Plaintiffs have not plead facts sufficient to raise a reasonable inference that

14

their disabilities played a motivating role in the alleged discriminatory treatment. Instead, Plaintiffs assert that their bare recitation of the elements of a claim of discrimination under the ADA—"namely that (1) both Plaintiffs are disabled veterans; (2) that at least one incident took place in the veteran's center at the university, so their status as veterans was known; and (3) they were treated differently than other non-disabled students"—is sufficient to state a claim for relief. (ECF No. 17-1 at 6.) Even construing all facts to favor Plaintiffs at this pleading stage, Plaintiffs have alleged no facts that suggest that UB's conduct surrounding the accusations against Plaintiffs was in any way motivated by Plaintiffs' alleged disabilities. The First Amended Complaint is devoid of facts that would support any inference that UB treated Plaintiffs differently on the basis of their disabilities. At most, Plaintiffs allege that their status as veterans was known to UB, but the Fourth Circuit has explained that "to establish causation more is required than '[t]he fact that [the defendant] is aware of [the plaintiff's] impairment.'"[8] *Neal*, 53 F.4th at 150 (quoting *Haulbrook v. Michelin North Am.*, 252 F.3d 696, 703 (4th Cir. 2001)). Even under liberal federal pleading standards, a plausible claim for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In this case, Plaintiffs' formulaic recitation of the elements of a claim for discrimination under the ADA and conclusory allegation that UB's discriminatory conduct was motivated by Plaintiffs' disabilities is insufficient to state a claim for relief under Rule 12(b)(6). *Id; see also Neal*, 43 F.4th at 150. Accordingly, Defendant's Motion to Dismiss the First Amended Complaint (ECF No. 14) is GRANTED as to Counts

---

[8] Additionally, the Court notes that veteran status is not itself a disability. Plaintiffs allege disabilities related to their status as veterans, however, and, construing all facts to favor Plaintiffs, the Court construes their allegations to assert that UB was aware of their status as disabled veterans.

III and IV.

### C.  Count VI: Failure to Train

UB contends that Plaintiffs' negligent training claim in Count VI fails as a matter of law because such claims must arise out of a common law violation and Plaintiffs' Count VI arises under Title IX.  (ECF No. 14-1 at 10–12; ECF No. 18 at 5–6.)  Plaintiffs do not respond to UB's arguments as to Count VI.  *See generally* (ECF No. 17-1).  Before reaching the substance of UB's arguments on this claim, the Court notes that Plaintiffs' failure to train claim is not clear from their First Amended Complaint.   Plaintiffs appear to allege failure to train under Title IX, *see* (ECF No. 10 ¶¶ 68–73), but UB construes Plaintiffs' claim as a state-law claim for failure to retain or supervise staff, *see* (ECF No. 14-1 at 10; ECF No. 18-5), and Plaintiffs do not contest this construction.[9]

Although a plaintiff may plead a state-law claim based on negligent retention and supervision, as Judge Chasanow of this Court has recognized, Maryland law requires that such "claims must be based on actions that constitute a common law violation, not a federal

---

[9]  Alternatively, it is possible that Plaintiffs intended to bring a failure to train claim under 42 U.S.C. § 1983, which provides a federal cause of action for violations of constitutional rights by state officials.  The Fourth Circuit has not squarely addressed whether a plaintiff may bring a § 1983 claim predicated on a violation of Title IX—rather than a violation of the Equal Protection Clause of the Fourteenth Amendment—but other federal courts of appeal have recognized such claims.  *See e.g.*, *Wadsworth v. Nguyen*, 129 F.4th 38, 49 (1st Cir. 2025); *accord Oona R.-S. by Kate S. v. Santa Rosa City Schs.*, 143 F.3d 473 (9th Cir. 1988); *Seamons v. Snow*, 84 F.3d 1226 (10th Cir. 1996).  In this case, Plaintiffs' First Amended Complaint does not reference 42 U.S.C. § 1983, and Plaintiffs do not dispute UB's construction of their Count VI as a claim under Maryland law.  To the extent Plaintiffs intended to bring a § 1983 claim in Count VI, they have not alleged facts sufficient to state such a claim.  "An institution can be held liable for a Title IX violation only if 'an official who . . . has authority to address the alleged discrimination and to institute corrective measures . . . has actual knowledge of the discrimination in the [institution's] programs and fails to adequately respond' or displays deliberate indifference to discrimination."  *Jennings v. Univ. of North Carolina*, 482 F.3d 686, 700 (4th Cir. 2007) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).  In this case, Plaintiffs allege no facts to suggest that any UB officials had actual knowledge that UB's investigations of student-on-student sexual harassment were discriminatory.  *See* (ECF No. 10 ¶¶ 24, 70–72 (alleging professor failed to report accusation and any investigation was biased).)  As such, Plaintiffs have not alleged facts sufficient to state a § 1983 claim for relief on a theory of failure to train under Title IX.

statutory violation." *Nammack v. Hampstead Pre-Owned*, Civ. No. DKC-19-1798, 2020 WL 1033589, at *5 (D. Md. Mar. 3, 2020) (citing *Bryant v. Better Bus. Bureau of Greater Md.*, 923 F. Supp. 720, 751 (D. Md 1996)).   "This Court has noted that negligent supervision claims 'existed at common law' in Maryland and therefore 'may only be predicated on common law causes of action.'" *Braxton v. Domino's Pizza, LLC*, Civ. No. RDB-06-1191, 2006 WL 3780894, at *4 (D. Md. Dec. 21, 2006) (quoting *Demby v. Preston Trucking Co., Inc.*, 961 F. Supp. 873, 881–82 (D. Md. 1997)); *see also id.* n.2 (collecting cases).  In this case, Plaintiffs base their Count VI on alleged violations of Title IX, *see* (ECF No. 10 ¶¶ 67–73), which did not exist at common law in Maryland.  Accordingly, Plaintiffs may not bring a negligent retention and supervision claim on this basis, and Defendant's Motion to Dismiss the First Amended Complaint (ECF No. 14) is GRANTED as to Count VI.

### D. Count VII: Pattern and Practice in Violation of Maryland Declaration of Rights

Finally, UB asserts that Plaintiffs' pattern-and-practice claim under Article 24 of the Maryland Declaration of Rights in Count VII is barred by sovereign immunity and Eleventh Amendment immunity such that this Court lacks jurisdiction to adjudicate this claim.  (ECF No. 14-1 at 12–13.)  In the alternative, UB asserts that even if this Court has jurisdiction, Plaintiffs have not sufficiently alleged a pattern or practice of discriminatory discipline against male students because Plaintiffs merely allege they were investigated, but not disciplined. (ECF No. 18 at 7–8.)  In Opposition, Plaintiffs assert that UB waived its Eleventh Amendment

and sovereign immunities by removing this action to this Court after Plaintiffs properly filed their Complaint in the Circuit Court for Baltimore City, Maryland. (ECF No. 17-1 at 3.)

Plaintiffs' Count VII invokes violations of Article 24 of the Maryland Declaration of Rights and seeks to hold UB directly liable for a pattern or practice of unconstitutional conduct. *See Ashton v. Brown*, 660 A.2d 447, 462 (Md. 1995) (collecting cases allowing action in damages for violations of Article 24 of Maryland Declaration of Rights). Under *Prince George's County v. Longtin*, 19 A.3d 859 (Md. 2011), Maryland law recognizes that a local government entity may be liable both vicariously for the conduct of employees *and* directly for a pattern or practice of conduct that violates Maryland's Declaration of Rights.[10] *Id.* The Appellate Court of Maryland very recently recognized that plaintiffs may bring pattern or practice claims—often called *Longtin* claims—directly against the State of Maryland. *See State v. Young*, 333 A.3d 610, 624 (Md. App. Ct. 2025). In this case, Plaintiffs assert a *Longtin* claim for direct liability against UB.

States and their instrumentalities, including publicly funded universities, enjoy the distinct protections of Eleventh Amendment immunity and sovereign immunity. *See Alden v. Maine*, 527 U.S. 706, 713 (1999) (differentiating Eleventh Amendment and sovereign immunity); *accord Stewart v. North Carolina*, 393 F.3d 484, 487 (4th Cir. 2005); *see also Dennard v. Towson Univ.*, 62 F. Supp. 3d 446, 451 (D. Md. 2014) ("[T]he University System of Maryland . . . is itself 'an arm or agency of the state government' entitled to sovereign immunity." (quoting

---

[10] *Longtin* authorizes broader liability than its federal analogue *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), in which the Supreme Court held that municipalities may not be held vicariously liable under Section 1983, but may be held directly liable for a pattern or practice of unconstitutional behavior. *Id.* at 699–91. *See also Doe #1 v. Bd. of Educ. of Somerset Cnty.*, Civ. No. RDB-22-1491, 2023 WL 375189, at *8 (D. Md. Jan. 24, 2023) (discussing relationship between *Monell* and *Longtin* claims).

MD. CODE ANN., EDUC. § 12-101(b)(6)(x).  The Eleventh Amendment to the United States Constitution "bars all claims by private citizens against state governments and their agencies, except where Congress has validly abrogated that immunity or the state has waived it." *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019).  Sovereign immunity is broader than Eleventh Amendment immunity and protects states from suit as "a fundamental aspect of the sovereignty which States enjoyed before the ratification of the Constitution." *Alden*, 527 U.S. at 713.  As Judge Hollander of this Court has explained, "a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject matter jurisdiction." *Grim v. Balt. Police Dep't*, Civ. No. ELH-18-3864, 2019 WL 5865561, at *10 (D. Md. Nov. 8, 2019) (quoting *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018)).

Removal to federal court may affect both Eleventh Amendment and sovereign immunities. A state waives its immunity under the Eleventh Amendment when it removes an action to federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 624 (2002). Similarly, in the Fourth Circuit, "a state's removal of a suit to federal court waives sovereign immunity . . . if the state has consented to suit in its own courts." *Biggs v. North Carolina Dep't of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020); *see also Passaro v. Virginia*, 935 F.3d 243, 247– 48 (4th Cir. 2019) (holding a state waives sovereign immunity only by "a clear statement").  As relevant to this case, under the Maryland Tort Claims Act ("MTCA"), Maryland has waived its sovereign immunity to tort actions—including state constitutional torts—in its own courts.[11] *See* MD. CODE ANN., STATE GOV'T §§ 12-103, 12-104; *Williams v. Morgan State Univ.*,

---

[11] Notably, the MTCA does *not* waive sovereign immunity to tort actions in federal court.  *See* MD. CODE ANN., STATE GOV'T §§ 12-103, 12-104 (waiving sovereign immunity for tort actions in state courts but preserving such immunity for tort actions in federal courts); *see also, e.g.*, *Lee*, 863 A.2d at 307 (explaining MTCA immunity

300 A.3d 54, 543–44 (Md. 2023) (summarizing immunity waiver under MTCA); *Cooper v. Rodriguez*, 118 A.3d 829, 845 (Md. 2015) (explaining the MTCA "clearly establish[es] that a party can bring a viable tort action against the State when the tort was committed by a State employee acting within the scope of his or her employment without malice or gross negligence" (quoting *Ford v. Balt. City Sheriff's Off.*, 814 A.2d 127, 134 (Md. Ct. Spec. App. 2002)); *Williams v. Morgan State Univ.*, 300 A.3d 54, 62 (Md. 2023) ("In *Lee*, we concluded that the MTCA applies to State constitutional torts . . . 'as long as they were committed within the scope of state employment and without malice or gross negligence.'" (quoting *Lee v. Cline*, 863 A.2d 297, 304 (Md. 2004)); *State v. Young*, 333 A.3d 610, 624 (Md. App. Ct. 2025) (holding plaintiff may allege pattern or practice claim against State of Maryland and its instrumentalities).

As discussed above, Plaintiffs' Count VII alleges direct liability against UB on the basis that it committed a constitutional tort by allowing a pattern or practice of unconstitutional conduct in violation of Article 24 of the Maryland Declaration of Rights. Although Plaintiffs initiated this action in the Circuit Court for Baltimore City, Maryland, and did not include state constitutional tort claims in their original Complaint, UB voluntarily removed the action to this Court. Accordingly, UB waived both its Eleventh Amendment and sovereign immunities by removal, and this Court has subject matter jurisdiction over Count VII. *See Lapides*, 535 U.S. at 624 (holding removal waives Eleventh Amendment immunity); *Embury v. King*, 361

---

waiver applies to constitutional tort actions in state courts). For this reason, this Court has repeatedly dismissed tort claims against the State of Maryland that are filed in—rather than removed to—federal court. *See, e.g.*, *Brummell v. Talbot Cnty. Bd. of Educ.*, 2023 WL 2537438, at *6 (D. Md. Mar. 16, 2023) (collecting cases holding State of Maryland and its instrumentalities retain sovereign immunity for tort actions in federal court); *Hernandez v. Lloyd*, Civ. No. JRR-23-1016, 2024 WL 1329297, at *4 (D. Md. Mar. 28, 2024) (collecting cases).

F.3d 562, 564–65 (9th Cir. 2004) (holding waiver of Eleventh Amendment immunity by removal extends to entire action and is not limited to claims in original complaint); *see also Biggs*, 953 F.3d at 241 (holding state waives sovereign immunity by removal where it has consented to suit in its own courts); *Palmer v. Maryland*, Civ. No. CDA-22-0899, 2024 WL 4349730 at *8–*9 (D. Md. Sept. 30, 2024) (explaining sovereign immunity in context of removal).

Although UB has waived its immunities to Count VII, Plaintiffs have not alleged facts sufficient to state a pattern or practice claim. As Judge Hollander of this Court has explained, *Longtin* claims require a plaintiff to allege "(1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights." *Johnson v. Balt. Police Dep't*, Civ. No. ELH-19-0698, at *30 (D. Md. Mar. 10, 2020)); *see Talley v. Anne Arundel Cnty., Md.*, Civ. No. RDB-21-347, 2021 WL 4244759, at *13 (D. Md. Sept. 17, 2021) (collecting cases); *Rodwell v. Wicomico Cnty., Md.*, Civ. No. DKC-22-3014, 2024 WL 1178202, at *14 (D. Md. Mar. 19, 2024) (collecting cases explaining that *Monell* and *Longtin* claims are subject to the same analysis); *Young*, 333 A.3d at 626–27 ("[T]o sustain a *Longtin* pattern or practice claim[] the plaintiff must prove that (1) the government entity maintained an unconstitutional pattern or practice, and (2) the specific unconstitutional pattern or practice resulted in the plaintiff's injury." (citing *Longtin*, 19. A3d at 887)).

The U.S. Court of Appeals for the Fourth Circuit has determined that plaintiffs may allege an unconstitutional pattern or practice by four methods:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is

> so 'persistent and widespread' as to constitute a 'custom or usage with the force
> of law.'

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citing *Carter v. Morris*, 164 F.3d 215, 218 (4th

Cir. 1999).  As Judge Gallagher of this Court recently recognized, although "often 'a plaintiff

lacks specific details regarding the [defendant's] internal policies and training procedures

before discovery' and . . . 'courts should not expect the plaintiff to possess a rich set of facts

concerning the allegedly unconstitutional policy and the responsible policymakers,' 'boilerplate

allegations will not suffice.'"  *Doe v. Anne Arundel Cnty.*, 2025 WL 675059, at *9 (D. Md. Mar.

3, 2025) (quoting *Saltz v. City of Frederick, Md.*, 538 F. Supp. 3d 510, 556–57 (D. Md. 2021)).

In this case, Plaintiffs have not met their burden to allege facts sufficient to show an

unconstitutional policy or custom.

Plaintiffs allege a pattern or practice of discrimination against male students based on

their experiences of allegedly discriminatory and biased investigations, but they offer only the

conclusory allegations that (1) the investigations were biased or discriminatory; and (2) they

were disciplined more severely than female students.  (ECF No. 10 ¶¶ 121–131.)  These bare

allegations are not sufficient to allege an express policy; biased final decisions; deliberate

indifference to students' rights; or a persistent and widespread practice of discrimination based

on sex as required to plead an unconstitutional policy or custom.  *See Lytle*, 326 F.3d at 471.

As to the first two methods of alleging a pattern or practice of discrimination, Plaintiffs do

not allege that any express policy existed or that any person with final decision-making

authority made a biased decision.  Rather, they allege that the accusation against Mr. Francis

was deemed unsubstantiated after a hearing, and they make no allegations as to whether Mr.

Jones faced any discipline from a final policymaking authority whatsoever.  Accordingly, they

have not alleged facts sufficient to allege an express policy of discrimination or discrimination by a UB official with policymaking authority. *See Lytle*, 326 F.3d at 471.

Relatedly, although Plaintiffs allege failure to train elsewhere in their First Amended Complaint, to the extent they premise their pattern or practice claim on such allegations, they have not alleged facts sufficient to state such a claim. Ordinarily, a pattern or practice claim premised on failure to train requires allegations of "(1) the nature of the training; (2) that the training was a 'deliberate or conscious' choice by the [defendant]; and (3) that the . . . conduct result[ed] from said training." *Chestnut v. Kincaid*, Civ. No. RDB-20-2342, 2021 WL 1662469, at *15 (D. Md. Apr. 28, 2021). In this case, Plaintiffs' First Amended Complaint is devoid of any factual allegations regarding the training provided to UB staff. Even assuming Plaintiffs had made allegations as to the training program at issue, any such allegations fall short of alleging deliberate indifference because they allege that an investigation ultimately exculpated Mr. Francis. Plaintiffs do not allege whether Mr. Jones ultimately faced any discipline or whether he was deemed culpable for the accusations against him. Accordingly, they have not stated facts sufficient to allege an unconstitutional pattern or practice of discrimination based on failure to train. *Compare id.* at *15–*16 (declining to dismiss pattern or practice claim where plaintiff alleged specific deficiency in training program) *with Drewry v. Stevenson*, Civ. No. WDQ-10-2340, 2010 WL 93268, at *3–*4 (D. Md. Jan. 6, 2010) (emphasizing need for multiple instances of inadequate training such that improper training amounts to deliberate indifference to constitutional rights).

Finally, Plaintiffs have not alleged a practice "so 'persistent and widespread'" that it "constitute[s] a 'custom or usage with the force of law.'" *Lytle*, 326 F.3d at 471 (citing *Carter*,

23

164 F.3d at 218).  The Supreme Court of Maryland has emphasized that pattern or practice claims premised on custom or usage are appropriate upon "multitudinous evidence that [the plaintiff's] experience was not an isolated incident."  *Longtin*, 19 A.3d at 887–888.  In this case, construing all allegations in the light most favorable to Plaintiffs, they have alleged two[12] instances of discriminatory investigation or failure to investigate, and they have made only conclusory assertions that the investigations were discriminatory based on their male sex.  Two instances of discriminatory investigations that did not result in discipline for one Plaintiff are not sufficient to allege a pattern or practice.  *See Chestnut*, 2021 WL 1662469, at *5, *15–*16 (determining pattern or practice claim with "extensive factual allegations" of "numerous deficient investigations" were sufficient to survive dismissal); *Owens v. Balt. City State's Atty's Off.*, 767 F.3d 379, 403 (4th Cir. 2014) (reversing dismissal of pattern or practice claim alleging numerous "reported and unreported cases," and "successful motions" that sufficiently alleged custom of "knowing[] and repeated[] suppress[ion of] exculpatory evidence in criminal prosecutions").  Accordingly, Defendant's Motion to Dismiss (ECF No. 14) is GRANTED as to Count VII.

## II.    Plaintiffs' Motion for Leave to Amend

In their Motion (ECF No. 19), Plaintiffs seek leave to amend their First Amended Complaint because further investigation and discussion has allowed them to "clarify the factual basis of Plaintiffs' existing claims."  (*Id.* ¶¶ 5, 7.)  In Opposition (ECF No. 22), UB asserts that the proposed amendments are futile or, alternatively, lack a good faith basis such that leave to

---

[12]  Although Plaintiffs argue that UB failed to properly investigate the alleged attack against Mr. Jones, they do not allege that UB had any knowledge of the attack.

amend should be denied.  (*Id.* at 2–10.)  Specifically, UB asserts that the proposed amendments

fail to cure the causation deficiencies as to Counts I through IV.  (*Id.* at 2–6.)  Similarly, UB

argues that any amendment to Plaintiffs' negligent training claim in Count V is futile because

that claim improperly rests on a violation of Title IX, and amendment to Plaintiffs' pattern or

practice claim in Count VII would be futile because Eleventh Amendment immunity bars that

claim.  (*Id.* at 7–9.)  Lastly, UB argues that Plaintiffs have provided no good faith basis for

their delay in seeking leave to file a Second Amended Complaint.[13]  (*Id.* at 9–10.)

As explained above, Federal Rule 15(a) reflects "federal policy in favor of resolving

cases on their merits instead of disposing of them on technicalities."  *Laber v. Harvey*, 438 F.3d

404, 426 (4th Cir. 2006); FED. R. CIV. P. 15(a)(2) (directing that amendment should be "freely"

granted "when justice so requires").  In applying Rule 15(a)'s liberal standard for amendment,

district courts have discretion to deny leave to amend "when the amendment would be

prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment

would be futile."  *Equal Rts. Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *accord*

---

[13]  In their Reply (ECF No. 25), Plaintiffs assert that they "first requested leave to file an amended complaint on November 5, 2024, as an alternative to dismissal, a request which has yet to be granted or denied by this Court."  (ECF No. 25 at 1.)  Plaintiffs refer to their Response in Opposition (ECF No. 17) to UB's Motion to Dismiss, in which Plaintiffs requested leave to amend but did not describe or attach any proposed amendments. *See* (ECF No. 17-1 at 6.); *see also* Loc. R. 103.6(c) (requiring clean copy of amended pleading and copy reflecting changes to be included as an exhibit to filing seeking amended pleading).  The Fourth Circuit has indicated that a request to amend may be properly denied when the Court is not able to evaluate the proposed amendments. *See ACA Financial Guaranty Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 218 (4th Cir. 2019) (concluding district court did not abuse its discretion in denying request to amend because plaintiff never identified facts or causes of action they sought to amend to pleadings); *see also Willner v. Dimon*, 849 F.3d 93, 114 (4th Cir. 2017) ("'[W]here, as here, the plaintiff fails to formally move to amend and fails to provide the district court with any proposed amended complaint or other indication of the amendments he wishes to make, the district court [does] not abuse its discretion' in denying leave to amend." (alterations in original) (quoting *Estrella v. Wells Fargo Bank, N.A.*, 497 F. App'x 361, 362 (4th Cir. 2012) (per curiam))).  In this case, Plaintiffs did not provide their proposed amendments to the Court until February 4, 2025, and they do not provide an explanation for the three-month delay between their initial request and their motion to amend.

*Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is futile and may be denied when it "is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). The Fourth Circuit has "made clear that district courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny." *In re Triangle Capital Corp. Secs. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) (citing *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011)).

In this case, Plaintiffs have already amended their Complaint once as a matter of course, *see* (ECF No. 10), and, upon review of their proposed Second Amended Complaint (ECF No. 19-1; ECF No. 21), further amendment would be futile. Plaintiffs' proposed Second Amended Complaint (ECF No. 19-1) adds further factual allegations, but these allegations do not cure the manifest deficiencies identified above as to Plaintiffs' First Amended Complaint.[14] Specifically, Plaintiffs clarify that Mr. Francis is a heterosexual white male and United States Navy veteran, and Mr. Jones is a heterosexual African American male who medically retired from the United States Army after tours of duty in Iraq and Afghanistan. (ECF No. 19-1 ¶¶ 8, 10, 14–16.) Mr. Francis became totally and permanently disabled in 2022 due to a traumatic brain injury and post-traumatic stress disorder ("PTSD") related to his military service, and he uses a support animal. (*Id.* ¶¶ 17–19.) Mr. Jones is totally and permanently disabled due to PTSD, depression, night terrors, and deteriorating injuries to his spinal cord, ACL, and foot,

---

[14] Per Local Rule 103.6(c), "the party filing an amended pleading shall file and serve . . . a copy of the amended pleading in which stricken material has been line through or enclosed in brackets and new material has been underlined or set forth in bold-faced type." *See* Loc. R. 103.6(c) (D. Md. 2025). Although Plaintiffs' proposed Second Amended Complaint contains some allegations in bold-faced type, it appears that some new allegations were not properly identified. *Compare* (ECF No. 19-1) *with* (ECF No. 21). For clarity, although the Court has reviewed the entire proposed Second Amended Complaint (ECF No. 19-1; ECF No. 21), this summary of the newly alleged allegations relies primarily on the allegations so identified in bold type in the Plaintiffs' proposed Second Amended Complaint Plaintiffs.

all of which are related to his military service. (*Id.* ¶¶ 21–22.) Plaintiffs allege that they have both been found permanently disabled by the United States Department of Veterans Affairs. (*Id.* ¶¶ 23–25.) Plaintiffs refine their allegations of discrimination by alleging that the investigations reflect the discriminatory belief "that an individual with combat related post-traumatic stress disorder is a violent or irrational person" or "that individuals with combat-related post-traumatic stress disorder are likely to engage in acts of violence or be violent." (*Id.* ¶¶ 102, 90.)

Finally, Plaintiffs add allegations specific to the female students' accusations against them and the alleged attack against Mr. Jones. They allege that neither of them had previously been accused of misconduct on campus, and UB did not interview or review witnesses, documents, and video footage that may have been favorable to Plaintiffs in either investigation. (*Id.* ¶¶ 65, 79, 75–77.) They allege that the attack against Mr. Jones occurred on UB's campus at the Bob Parson Veteran's Center, which is accessible only by key fob or manual admission by staff. (*Id.* ¶¶ 26–34.) Plaintiffs allege that Ms. Bell and the unidentified male were able to access the building because UB failed to properly secure the door. (*Id.* ¶¶ 28, 34.) Plaintiffs allege that Ms. Bell was never investigated for her possible involvement in the attack against Mr. Jones, and witnesses favorable to Mr. Jones were not interviewed. (*Id.* ¶¶ 63, 62.) As relevant to the accusations against Mr. Francis, Plaintiffs newly allege that Ms. Vital suffers from mental health disorders, and the professor in whom she confided was not trained to recognize mental illness in students. (*Id.* ¶¶ 44–46.) Plaintiffs now allege that Ms. Vital's conduct was never investigated, and Mr. Francis's phone records were not reviewed until after he had faced a disciplinary hearing. (*Id.* ¶¶ 51, 54.)

These additional factual allegations are insufficient to cure the causation deficiencies identified above as to Plaintiffs' Title IX and ADA discrimination claims in Counts I through IV. Although Plaintiffs' proposed amendments provide greater factual detail as to the problems they identified in their respective investigations—such as failure to properly preserve potential evidence and investigate witnesses—these new allegations do not address Plaintiffs' failure to allege causation as required under Title IX and the ADA. Even in the proposed amendments, Plaintiffs allege no facts that support any inference that Plaintiffs' male sex was a reason for the alleged problems in the investigations. Similarly, Plaintiffs' proposed amendments do not allege that any similarly situated female students—that is, female students accused of sexual harassment by fellow students—were treated differently than Plaintiffs.[15] Absent such facts, Plaintiffs have not sufficiently pled causation as required to state a claim for discrimination under Title IX. *See Sheppard v. Visitors of Virginia State University*, 993 F.3d 230, 236–37 (4th Cir. 2021) (emphasizing need to allege but-for causation "in Title IX claims alleging discriminatory school disciplinary proceedings"). Relatedly, as explained above as to the ADA claims, Plaintiffs have not alleged facts sufficient to show any causal connection between the alleged discrimination and their disabilities. The proposed amendments add factual details as to Plaintiffs' disabilities but do not add any allegations related to causation in their ADA discrimination claims. Moreover, their proposed amended allegations that the investigations reflected discriminatory beliefs regarding individuals with combat-related

---

[15] To the extent Plaintiffs assert that Ms. Bell and Ms. Vital are similarly situated to Plaintiffs, they have not alleged that either female student was accused of sexual harassment by another student. Nor do they allege that UB ever received any report that Ms. Bell had been involved in the alleged physical attack against Mr. Jones.

traumas remain conclusory.  Such bare assertions of bias are insufficient to support an inference that the investigations were at all motivated by UB's alleged bias.  *See Twombly*, 550 U.S. at 555; *Neal v. East Carolina Univ.*, 53 F.4th 130, 150 (4th Cir. 2022) (explaining ADA causation requirements).

As explained above, there are no facts that Plaintiffs may allege to successfully bring a state-law negligent retention and supervision claim premised on federal statute.  *Braxton v. Domino's Pizza, LLC*, Civ. No. RDB-06-1191, 2006 WL 3780894, at *4 (D. Md. Dec. 21, 2006) (quoting *Demby v. Preston Trucking Co., Inc.*, 961 F. Supp. 873, 881–82 (D. Md. 1997)).  Similarly, to the extent Plaintiffs intended to bring a failure to train claim pursuant to 42 U.S.C. § 1983, their proposed amendments still do not allege that a UB "official who . . . has authority to address the alleged discrimination and to institute corrective measures . . . ha[d] actual knowledge of the discrimination . . . and fail[ed] to adequately respond . . . ."  *Jennings v. Univ. of North Carolina*, 482 F.3d 686, 700 (4th Cir. 2007) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).  In the proposed Second Amended Complaint, Plaintiffs allege that a professor failed to report Ms. Vital's accusations against Mr. Francis, but they allege no facts to show that a UB official with "authority to address the alleged discrimination and to institute corrective measures" had any knowledge—let alone actual knowledge—of the discrimination.  *See generally* (ECF No. 19-1 ¶¶ 109–120).  Absent such allegations, Plaintiffs have not cured the deficiencies identified above as to their failure to train claim in Count VI, and the proposed amendments would be futile.  Finally, Plaintiffs proposed Second Amended Complaint adds no new allegations as to the pattern or practice claim in Count VII.

Plaintiffs have already amended their Complaint once as a matter of course and filed their proposed Second Amended Complaint with the benefit of UB's fully briefed Motion to Dismiss. For the reasons explained above, the proposed amendments would still be subject to dismissal for the same reasons as the First Amended Complaint. Accordingly, amendment in this case would be futile, and Plaintiffs' Motion for Leave to Amend (ECF No. 19) is DENIED. *See, e.g.*, *In re Triangle Capital Corp. Secs. Litig.*, 988 F.3d at 750. Relatedly, because Plaintiffs have already amended their Complaint once as a matter of course and future amendment would be futile, Plaintiffs' First Amended Complaint is DISMISSED WITH PREJUDICE.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss as to Plaintiffs' First Amended Complaint (ECF No. 14) is GRANTED and Plaintiffs' Motion for Leave to Amend (ECF No. 19) is DENIED. Moreover, because amendment would be futile, Plaintiffs' First Amended Complaint (ECF No. 10) is DISMISSED WITH PREJUDICE and this action shall be CLOSED.

A separate Order follows.

Date: July 16, 2025

/s/
_____
Richard D. Bennett
United States Senior District Judge